Petty v. Morris, 2014 NCBC 66.

STATE OF NORTH CAROLINA

COUNTY OF GUILFORD

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 7741

RONALD E. PETTY, SR. and
RONALD E. PETTY, III, Individually
and Derivatively on Behalf of
ABSOLUTE RECYCLING
CONTRACTORS, LLC,

        Plaintiffs,

    v.

CHADHAM S. MORRIS and
MICHAEL R. MCFEELEY,

        Defendants

    and

ABSOLUTE RECYCLING
CONTRACTORS, LLC

        Nominal Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER

{1}     THIS MATTER is before the Court on Defendants' Motion to Dismiss, filed on August 22, 2014 ("Defendants' Motion"), and Plaintiffs' Motion to Recognize Plaintiff's July 17, 2014 Letter As a Proper Demand on ARC and Allow Plaintiffs to Proceed with the Derivative Claims Against Defendants, or Alternatively, to Shorten or Waive the 90-Day Waiting Period, filed on December 1, 2014 ("Plaintiffs' Motion") (collectively, the "Motions").  As the Motions challenge the parties' standing to bring claims, the Court must resolve these Motions prior to further considering the other matters at issue.

*Smith Moore Leatherwood LLP, by Patti W. Ramseur and W. Craig Turner for Plaintiffs.*

*Brooks, Pierce, McLendon, Humphrey & Leonard LLP, by Justin N. Outling and Jennifer K. Van Zant for Defendants.*

Gale, Chief Judge.

## I.   MATTER BEFORE THE COURT

{2}   This litigation arises from disputes among the members of Absolute Recycling Contractors, LLC ("ARC").  The five ARC members and their percentage interests are as follows:

(a) Plaintiff Ronald E. Petty, Sr. ("Petty, Sr.") owns 25.4%;

(b) Plaintiff Ronald E. Petty, III ("Petty, III") owns 25.4%;

(c) Defendant Chadham S. Morris ("Morris") owns 14.4%;

(d) Defendant Michael R. McFeeley ("McFeeley") owns 9.4%;

(e) Nonparty C. Norman Bunce ("Bunce") owns 25.4%.

As more fully discussed below, ARC's Operating Agreement provides that decisions affecting ARC's assets or affairs requires agreement of two-thirds of the ownership interests.

{3}   Plaintiffs and Defendants both seek to assert derivative claims on behalf of ARC.  This Order is limited to the consideration of whether demand prerequisites have been met, entitling the members to bring derivative actions. Assuming that at least one of the parties has standing, the Court will address the merits of the respective derivative claims in a separate order.

{4}   Plaintiffs initiated the action by filing a Verified Complaint and Motion for Preliminary Injunction ("Original Complaint") on July 22, 2014. Plaintiffs assert that their derivative claims follow a pre-suit demand on ARC by letter from their counsel dated July 17, 2014 ("Plaintiffs' Demand Letter").  They seek to redress alleged breaches of fiduciary duty by Defendants Morris and McFeeley.

{5}   On August 22, 2014, Defendants moved to dismiss the Original Complaint, asserting that the purported individual claims are instead derivative

claims and attacking Plaintiffs' standing to bring a derivative claim for failure to make a proper pre-suit demand.

{6}     On September 15, 2014, Defendants filed their Answer and Counterclaims.  They also derivatively filed their Motion for Preliminary Injunction and for Receivership, seeking to redress alleged breaches of Plaintiffs' fiduciary duties to ARC.  Defendants assert that their derivative claims followed a pre-suit demand on ARC made by letter from their counsel dated June 6, 2014 ("Defendants' Demand Letter").

{7}     On October 23, 2014, the Court held an initial case management conference.  The Court set a hearing on pending motions for November 18, 2014.  At that time, no motion to dismiss had been made to dismiss Defendants' derivative claims for failure to make proper pre-suit demand.  After the hearing, when considering Defendants' Motion to Dismiss, the Court, on its own motion, raised the question of whether Defendants' pre-suit letter was an adequate demand, and noted that the record did not contain certain facts necessary to resolve whether either party had met the statutory requirements for pre-suit demand.

{8}     On November 10, 2014, Plaintiffs filed their First Amended Complaint and Motion for Preliminary Injunction ("Amended Complaint").

{9}     The Court allowed the parties to supplement the record to present additional facts as to the circumstances of how the demand letters were sent and received.  On December 1, 2014, Plaintiffs responded by filing the Plaintiffs' Motion, accompanied by the Fifth Affidavit of Ronald E. Petty, III.  By the motion, Plaintiffs also asked the Court to find that Plaintiffs legitimately brought the derivative claim less than ninety days after demand on ARC, in light of their demonstration of the immediate irreparable harm ARC was suffering.

{10}     Defendants replied by filing the Defendants' Motion and Bunce's supplemental affidavit.

{11}     The challenge to the adequacy of any pre-suit demand is, *inter alia*, a challenge to the Court's subject matter jurisdiction over the derivative claims.  A party's standing to bring a derivative claim depends on whether they properly meet

the demand requirement. N.C. Gen. Stat. § 57D-8-01 (2014) ("[A] member may bring a derivative action if the following condition[ is] met: . . . The member made written demand on the LLC to take suitable action . . . ."). "Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction." *Aubin v. Susi*, 149 N.C. App. 320, 324, 560 S.E.2d 875, 878 (2002). Because "[a] Court may not properly exercise subject matter jurisdiction over the parties to an action unless the standing requirements are satisfied," the Court must first determine whether the demand requirement is met prior to entering further orders in this matter. *Teague v. Bayer AG*, 195 N.C. App. 18, 23, 671 S.E.2d 500, 554 (2009).

## II.    FINDING OF FACTS

{12}    It is appropriate for the Court to consider record evidence beyond the pleading in order to determine its jurisdiction. *Tart v. Walker*, 38 N.C. App. 500, 502, 248 S.E. 2d 736, 737 (1978) ("In our view, matters outside the pleadings . . . may be considered and weighed by the court in determining the existence of jurisdiction over the subject matter."). The Court makes the following findings of fact for purposes of the pending Motions only, and only as necessary to determine its jurisdiction.

{13}    ARC is a privately held North Carolina Limited Liability Company ("LLC") owned by five members in the percentages noted above.

{14}    The members executed the First Amended and Restated Operating Agreement of Absolute Recycling Contractors, LLC ("Operating Agreement") in 2010.

{15}    Section 6.1 of the Operating Agreement provides that ARC is member-managed, and that "except as otherwise provided herein, any management or similar decisions affecting the Company or its assets or affairs shall require the consent of Members owning more than two-thirds (2/3) of the Percentage Interests." (Am. Compl. Ex. A, at 9.)[1]

---

[1] Plaintiffs contend in their Amended Complaint that there has been an "Event of Sale" caused by the termination of Morris's and McFeeley's employment. Defendants challenge that contention.

{16}    Section 11.6(a) of the Operating Agreement provides for notice to members by personal delivery or by mail, and without requiring registered or certified mail.  Section 11.6(b) provides that delivery of notice to the Company may be made as follows:

> Any notice to be given to the Company hereunder may either be delivered personally or mailed by registered or certified mail, postage prepaid, addressed to the Company at the address of its registered office set forth in Article III hereof.  Any notice so delivered or mailed shall be deemed to have been given to the Company at the time it is delivered or mailed, as the case may be.

(Am. Compl. Ex. A, at 27.)

{17}    Section 11.6 does further not provide that these means of delivery of notice to members or the company are exclusive.

{18}    Petty, III is, and at all relevant times has been, ARC's registered agent.

{19}    Each of ARC's members was a member at the time relevant to the Motions.

{20}    Plaintiffs and Defendants each claim that the opposing parties have violated fiduciary duties owed to ARC, thereby triggering claims that may be brought by or on behalf of ARC, and that such claims are properly brought as derivative claims.

{21}    Defendants' Demand Letter was written by the law firm of Brooks, Pierce, McLendon, Humphrey & Leonard LLP ("Brooks Pierce") while representing Bunce, McFeeley, and Morris, and was addressed to ARC "c/o" of the law firm of Smith Moore Leatherwood, LLP ("Smith Moore").  Smith Moore represented the Pettys at that time, but there is some dispute whether Smith Moore also represented ARC.

{22}    The Defendants' Demand Letter followed earlier correspondence regarding Bunce's demand to review ARC's corporate records.  Bunce initially

---

Although the Pettys could ultimately attain a two-thirds controlling interest if they obtained the interests of both Morris and McFeeley, they have not done so.

retained Brooks Pierce during or before May 2013.  On May 16, 2013, Bunce made demand on ARC to allow Michael Schaefer ("Schaefer") of Brooks Pierce, or his designee, to inspect ARC's corporate books and records.  Bunce's letter was sent by certified mail and addressed to "Absolute Recycling Contractors, LLC c/o its Members," listing each of the four other members.  (Second Aff. Norman Bunce Ex. B, at 4.)

{23}    On May 17, 2013, Petty, III advised Bunce by e-mail that any request for "information from any Petty family member, A-1 Sandrock and ARC" should "flow through our lawyers at Smith Moore."  (Second Aff. Norman Bunce, Ex. B, at 2.)

{24}    In response, Schaefer corresponded with Stephen Klee ("Klee") at Smith Moore, who Bunce believed was ARC's corporate counsel.  Thereafter, discussions continued between Schaefer and Patti W. Ramseur ("Ramseur") of Smith Moore.  On June 5, 2013, Schaefer sent a letter addressed to Ramseur, copied to "Absolute Recycling Contractors, LLC c/o its Members," and listing each of the four additional members.  (Second Aff. Norman Bunce Ex. E, at 2.)  It is unclear whether the letter was mailed separately to the individual members.

{25}    Justin N. Outling ("Outling"), a Brooks Pierce attorney, assumed ongoing communications with Smith Moore.  On February 17, 2014, Outling, on Bunce's behalf, sent a certified mail letter addressed to "Absolute Recycling Contractors, LLC c/o its Members," listing the other four members.  (Fifth Aff. Ronald E. Petty, III, Ex. 4, at 1.)  Carbon copies were listed as sent to Ramseur and Klee.  It is unclear whether the letter was individually mailed to each member.

{26}    In a February 21, 2014, email, Outling asked Ramseur whether Smith Moore represented ARC regarding the matter detailed in Outling's February 17, 2014, letter.  Ramseur responded by e-mail on February 24, 2014, that Smith Moore did represent ARC in that regard, but gave Outling permission to contact Jimmy Petty, who is not an ARC member, but who was believed to be associated with A-1 Sandrock.  Some of the records in question related to A-1 Sandrock and its dealings with ARC.

{27}    On June 6, 2014, Outling sent the Defendants' Demand Letter, addressed to "Absolute Recycling Contractors, LLC c/o Patti West Ramseur, Esq." with a reference line of "Members' Demand for Action by Absolute Recycling Contractors, LLC." (Fifth Aff. Ronald E. Petty, III Ex. 3, at 1.)  The letter reflects that it was sent by e-mail and regular U.S. mail.  Different from prior correspondence, the letter was not addressed to ARC "c/o" its listed members.  The salutation of the letter was: "Dear Members." (Fifth Aff. Ronald E. Petty, III Ex. 3, at 1.)  The letter listed copies to Bunce, Morris, and McFeeley, but not to Petty, Sr. or Petty, III.  The text of the letter identified each of the five members and their percentage interest.  It identified Petty, III as an owner but not as ARC's registered agent.

{28}    The first paragraph of the Defendants' Demand Letter states that,

> [o]n behalf of Messrs. Bunce, Morris and McFeeley, we hereby make a written demand ("Demand"), pursuant to Section § [sic] 57D-8-01 of the North Carolina General Statutes, that the Company take suitable action to address certain misconduct and improper transactions effected by particular Members, management, or other persons affiliated with the Company.

(Fifth Aff. Ronald E. Petty, III Ex. 3, at 1.)

{29}    On June 18, 2014, Ramseur wrote a letter addressed to Morris individually, copied to Outling, Bunce, and McFeeley, demanding that Morris provide information regarding certain ARC revenues that had been received in cash.  Her letter identifies  Smith Moore's clients as Petty, Sr. and Petty, III.  (Fifth Aff. Ronald E. Petty, III Ex. 2, at 17.)

{30}    On June 24, 2014, Ramseur responded to the Defendants' Demand Letter.  She addressed her letter to Outling, and listed no copies.  Her letter began:

> As you know, our firm represents Ronald E. Petty, Sr. and Ronald E. Petty, III.  We have reviewed your letter dated June 6, 2014, which is addressed to Absolute Recycling Contractors, LLC ("ARC").  Our clients are unable to respond to any statutory demands directed to ARC.  As you noted, Mr. Petty, Sr. and Mr. Petty, III do not own the 2/3 of ARC's percentage interests required for management decisions affecting ARC.

(Fifth Aff. Ronald E. Petty, III Ex. 2, at 4.)

{31} On July 17, 2014, Ramseur wrote Plaintiff's Demand Letter, addressed only to Outling. The letter has the reference line: "Absolute Recycling Contractors, LLC." (Fifth Aff. Ronald E. Petty, III Ex. 2, at 1.) The letter lists copies to ARC, Bunce, Morris, and McFeeley, but not to Petty, Sr. or Petty, III.

{32} Plaintiffs' Demand Letter identified that Ramseur wrote on behalf of Petty, Sr. and Petty, III, and stated her understanding that Bunce would not join with the Pettys to institute suit by ARC. She then advised that the Pettys intended to "pursue legal action to protect their interests as Members of ARC and to protect ARC." (Fifth Aff. Ronald E. Petty, III Ex. 2, at 2.) Although the letter was addressed only to Outling, the body of the letter contained the following, in bold:

> "**Please accept this letter as a written demand on ARC (made pursuant to N.C. Gen. Stat. § 57D-8-01) to initiate a lawsuit against Mr. Morris and Mr. McFeeley for damages to ARC and for preliminary and permanent injunctions enjoining Mr. Morris and Mr. McFeeley from engaging in activities that contravene their fiduciary duties to ARC**."

(Fifth Aff. Ronald E. Petty, III Ex. 2, at 2.)

{33} Petty, III testifies by affidavit that a copy of the letter was addressed and sent to "Absolute Recycling Contractors, LLC, c/o Ronald Eugene Petty, III, Registered Agent," and that Petty, III received the letter, accepting it as ARC's registered agent. (Fifth Aff. Ronald E. Petty, III, at ¶ 5.) There is no record of whether the letter was sent by registered or certified mail.

{34} The ARC members did not meet in response to either the Defendants' Demand Letter or Plaintiffs' Demand Letter, and no combination of members representing a two-thirds interest have taken or expressly refused to take action in the name of ARC in response to the demands of those letters.

{35} Plaintiffs initiated their action and sought injunctive relief on July 22, 2014, less than ninety days following delivery of Plaintiffs' Demand Letter. Both the Original Complaint and the Amended Complaint allege that ARC was suffering immediate, irreparable harm, but Plaintiffs did not further ask the Court to excuse the ninety-day waiting period before the derivative action was allowed to proceed.

Plaintiffs made such a request in Plaintiffs' Motion, filed December 1, 2014, at which time the ninety-day period had expired.

{36}   Defendants' derivative claim and the corresponding Motion for Preliminary Injunction and for Receivership were filed on September 15, 2014, more than ninety days following Defendants' Demand Letter.

## III.   LEGAL STANDARDS REGARDING DEMAND

{37}   The derivative claims in this action are governed by the North Carolina Limited Liability Company Act (the "LLC Act"), contained in Chapter 57D of the North Carolina General Statutes.  *See* N.C. Gen. Stat. §§ 57D-1-01 to -11-03. The Court refers to various provisions of the LLC Act by reference to their article or section number.

{38}   Derivative actions on behalf of an LLC are governed by Article 8.  *See id.* §§ 57D-8-01 to -07.  Section 57D-8-01(a)(2), requires that

> [t]he member made written demand on the LLC to take suitable action, and either (i) the LLC notified the member that the member's demand was rejected, (ii) 90 days have expired from the date the demand was made, or (iii) irreparable injury to the LLC would result by waiting for the expiration of the 90-day period.

*Id.* § 57D-8-01(a)(2).

{39}   Section 57D-8-01(a)(2), therefore, imposes two requirements: (1) that a written demand on the LLC must be made; and (2) if a demand was properly made, that a ninety-day period after the demand expire, unless excused by a corporate refusal or a finding of irreparable injury that would result from imposing such a waiting period.

{40}   The Court is guided in interpreting those requirements by prior legislative history, both of the LLC Act and of North Carolina's Business Corporation Act.

{41}   Chapter 57D displaced the former Chapter 57C of the General Statutes.  Former Section 57C-8-01 did not have an express demand requirement followed by a mandatory waiting period, instead providing that :

[t]he complaint shall allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the managers, directors, or other applicable authority and the reasons for the plaintiff's failure to obtain the action, or for not making the effort.

N.C. Gen. Stat. § 57C-8-01(b) (2012) (repealed by the LLC Act, § 1, 2013 N.C. Sess. Laws 157 (2013)).

{42}    This change in the LLC Act provisions regarding bringing a derivative action parallels changes to North Carolina Business Corporation Act providing for derivative actions on behalf of corporations. *See* N.C. Gen. Stat. § 55-7-42 (2014). Section 55-7-42(2) of the Business Corporation Act uses language almost identical to section 57D-8-01(a) and requires written demand on a corporation followed by the corporation's rejection of the demand, the expiration of ninety days after the demand, or irreparable injury to the corporation that would result from waiting for the ninety days. *Id.  Compare* N.C. Gen. Stat. § 55-7-42, *with* N.C. Gen. Stat. § 57D-8-01(a)(2).  Section 55-7-42 displaced the former section 55-7-40(b), which required only that the derivative claimant allege efforts made to obtain the requested relief before filing suit, using language essentially the same as the language of repealed section 57C-8-01(b). *See* N.C. Gen. Stat. § 55-7-40(b) (1990) (amended by June 1, 1995 Act, § 1, 1995 N.C. Sess. Laws 149 (1995)).

{43}    The North Carolina Court of Appeals has considered the impact of these legislative changes in the context of corporations, but not LLCs. *See Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 408–12, 537 S.E.2d 248, 261–63 (2000).  In *Norman*, the court noted that former section 55-55(b), dealing with derivative actions for a corporation, allowed for a futility exception to the demand requirement, but that the legislature's enactment of section 55-7-42 clearly abolished the exception, such that the demand requirement must now be strictly construed. *Id.* at 409–11, 537 S.E.2d at 261–63.

{44}    In the context of corporations, but not LLCs, the court of appeals has further addressed what may properly be considered corporate action adequate to refuse demand and excuse the ninety-day waiting period. *See Allen v. Ferrera,* 141 N.C. App. 284, 540 S.E.2d 761 (2000).  In *Allen*, there were two fifty-percent

shareholders in a corporation ("Subject Corporation"), one an individual and the other a corporation ("Corporate Shareholder") that was in turn owned by two individuals who were also its directors. *Id.* at 286, 540 S.E.2d at 763–64. The individual fifty-percent shareholder wrote a letter to the Corporate Shareholder and the two directors, making demand that the Subject Corporation take certain action. *Id.* at 285–86, 540 S.E.2d at 764–65. The corporate shareholder and the directors responded to the demand nine days later, denying the plaintiff's claims and making allegations of their own against the plaintiff. *Id.* at 286, 540 S.E.2d at 764. The plaintiff initiated an action less than ninety days following his demand letter, including both a derivative claim and individual claims. *Id.* at 286–87, 540 S.E.2d at 764. The court of appeals found that the plaintiff had failed to satisfy the demand requirements of section 55-7-42, because the Subject Corporation had not refused the pre-suit demand within the mandatory ninety-day waiting period, which was otherwise unexcused. *Id.* at 289, 540 S.E.2d at 765.

{45} The *Allen* court did not address the preliminary matter of whether the letter constituted adequate demand. *See id.* at 289, 540 S.E.2d at 765. The court instead focused on whether the response letter was a "rejection *by the corporation.*" *Id.* (emphasis in the original). The court found that the defendants,

> although respectively directors and a shareholder of [the Subject Corporation], did not sign the response letter in those corporate capacities. Plaintiff does not allege that defendants . . . held actual or apparent authority to bind [the Subject Corporation] through their individual signatures. The principles of agency therefore dictate that the corporation did not act to reject plaintiff's demand.

*Id.* (citing *Rowe v. Franklin Cnty.*, 318 N.C. 344, 349, 349 S.E.2d 65, 69 (1986)).

{46} The Court concludes that *Norman* and *Allen* collectively make clear that, at least for derivative actions governed by the Business Corporation Act, (1) the demand requirement must be strictly construed, allowing for no futility exception, and (2) any response adequate to constitute a corporate rejection that excuses the further running of the ninety-day waiting period must be made by those with authority to act on behalf of the corporation.

{47} Considering the virtually identical demand requirements in the LLC Act, the same principles apply to derivative actions governed by the LLC Act.

{48} Section 57D-8-01(a)(2) is clear that the demand preceding a derivative action must be made "on the LLC." N.C. Gen. Stat. § 57D-8-01(a)(2). An LLC is required to continuously maintain a registered agent within North Carolina. N.C. Gen. Stat. § 55D-30 (2014). "The sole duty of the registered agent to the [LLC] is to forward to the [LLC] at its last known address any notice, process, or demand that is served on the registered agent." *Id.* § 55D-30(b). Even if an Operating Agreement does not expressly so provide, a demand is effective pursuant to section 57D-8-01(a)(2) if delivered to an LLC's registered agent. *See* N.C. Gen. Stat. § 55D-33(a) ("Service of process, notice or demand required or permitted by law to be served on an entity may be served on the registered agent required by [N.C. Gen. Stat. § 55D-30.]"). The statue does not require delivery to be made by registered or certified mail.

{49} *Allen* further teaches that corporate action sufficient to reject a demand may be made only by one with authority to act on behalf of the corporation. The statutory powers of a registered agent do not extend that far. Generally, the power to act on the LLC's behalf is defined by the Operating Agreement. *See* N.C. Gen. Stat. § 57D-2-30(a) ("The operating agreement governs the internal affairs of an LLC and the rights, duties, and obligations of . . . the company officials in relation to each other, the LLC, and the interest owners. . . . ").

## IV.   ANALYSIS

{50} The Court now turns to whether either Plaintiffs or Defendants have met the statutory demand requirements in order to have standing to bring a derivative claim.

{51} ARC's registered agent has authority to accept notice for the LLC, both by statute and by ARC's Operating Agreement. However, two-thirds of the percentage interests must join to make decisions affecting ARC's affairs. Neither Plaintiffs nor Defendants have such ownership. If demand on ARC was delivered

not to its registered agent but only to members with less than two-thirds ownership collectively, it would not be effective. If demand was properly made on ARC through delivery to its registered agent, neither Plaintiffs nor Defendants had authority on their own to reject the demand on ARC's behalf.

{52} The Court must determine whether either Plaintiffs or Defendants delivered effective demand to ARC by delivery to either ARC's registered agent or by delivery to members collectively owning the requisite two-thirds percentage interest. If such a demand was made, then the Court must determine whether ARC took corporate action in response, or whether the ninety-day waiting period expired or may be excused because of the possibility of irreparable harm to ARC during the waiting period.

{53} It is clear that both Plaintiffs and Defendants were keenly aware that they were required to provide pre-suit notice pursuant to section 57D-8-01(a)(2). It is also clear that each knew to write to ARC by addressing correspondence to ARC "c/o" its individual members, and when doing so, included members with a collective ownership interest greater than a two-thirds.

{54} The Court first examines Plaintiffs' Demand Letter. The letter was addressed solely to Outling. Outling represented three clients who collectively had no authority to take action on ARC's behalf.

{55} The Court does not construe the Plaintiffs' Demand Letter to be an effective demand delivered through all of its members. Although Bunce, McFeeley, and Morris were listed as copy recipients, the Pettys were not, and the Court does not construe that the letter was addressed to the Pettys simply because it was written by their counsel. Ramseur could have but did not make demand on ARC by a letter addressed to ARC in care of each of its members.

{56} Plaintiffs contend, however, that Plaintiffs' Demand Letter constituted proper delivery of the demand to ARC through its registered agent because the letter, although addressed only to Outling, included in the body a "demand on ARC," and the letter was copied and mailed to ARC, and received by its registered agent.

{57}   The Court is asked to follow an indirect path, rather than the clear path that would have existed if the letter had been addressed expressly to ARC. With some reluctance, the Court finds Plaintiffs' Demand Letter to be a demand on ARC delivered through its registered agent.

{58}   The Court more easily finds that Defendants' Demand Letter was a demand on ARC by delivery to its registered agent. This letter was expressly addressed to ARC. While the letter was sent in care of Smith Moore, Smith Moore, as of June 6, 2014, clearly represented Petty, III, and Petty, III was ARC's registered agent. Petty, III had directed his fellow members to make any request for action on his part through Smith Moore. Petty, III had delegated to Smith Moore the authority to accept correspondence on his behalf. The better course might have been to state expressly that the letter was being delivered through ARC's registered agent; but, regardless, the letter's practical result was the same.

{59}   The Court has found both Plaintiffs' Demand Letter and Defendants' Demand Letter to have been adequate pre-suit demands on ARC. That does not, however, end the inquiry as to Plaintiffs' standing, because Plaintiffs filed suit less than ninety days after their demand.

{60}   Plaintiffs argue that ARC was suffering irreparable harm during the waiting period, so that the suit not untimely filed before expiration of the ninety days. The Court concludes that it need not now address the merits of that assertion because the ninety-day waiting period has already expired, without action from ARC in response to the demand letter.

{61}   The present case is different than one where a derivative claimant files a complaint without having made demand on the LLC at all. In that situation, this Court has previously rejected the argument that the demand deficiency can be cured by treating the complaint itself as the requisite demand. *See In re Harris Teeter Merger Litig.*, 2014 NCBC LEXIS 47, at *10 (N.C. Super. Ct. Sept. 24, 2014) (citing *Greene v. Shoemaker*, 1998 NCBC LEXIS 4, at *11 (N.C. Super. Ct. Sept 24, 1998)).

## V.    CONCLUSIONS OF LAW

{62}    The Court makes the following conclusions of law:

{63}    Plaintiffs made demand on ARC to take corporate action on July 17, 2014, in compliance with section 57D-8-01(a)(2)(i).  Although Plaintiffs brought their derivative claim prior to the expiration of the ninety-day period after their demand, they did so with specific allegations of immediate irreparable harm to ARC.  ARC has not taken action in response to Plaintiffs' Demand Letter, ninety days following that letter have now expired, and Plaintiffs are now entitled to pursue a derivative claim based on that demand.

{64}    Defendants' Motion is DENIED to the extent that it seeks to dismiss the derivative claims on the basis of inadequate demand on ARC.  The Court does not otherwise rule on the merits of Plaintiffs' derivative or individual claims.

{65}    Defendants' Demand Letter made demand on ARC to take corporate action in compliance with section 57D-8-01(a)(2)(i).  ARC has not taken action in response to Defendants' Demand Letter, ninety days following that letter expired before Defendants instituted their derivative claim or sought equitable relief on ARC's behalf, and Defendants are now entitled to pursue their derivative claim based on that demand.  Plaintiffs' Motion is DENIED to the extent it challenges Defendants' standing.  Otherwise, Plaintiffs' Motion is MOOT.

{66}    The Court makes no findings or conclusions regarding the merits of the parties' derivative claims, beyond finding that Plaintiffs or Defendants have standing to prosecute them.


IT IS SO ORDERED this 16th day of December, 2014.